IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LODGEWORKS L.P.<br>Plaintiff | § | |
| v. | § | Case No. 11-CV-1317-KHV-GLR |
| C.F. JORDAN CONSTRUCTION L.L.C.<br>Defendant | § | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to the Court's order of October 27, 2011 (Dkt. No. 6), C.F. Jordan Construction L.L.C. ("Jordan") files this, its response in opposition to the motion for preliminary injunction filed by LodgeWorks L.P. ("LodgeWorks"), and respectfully shows the Court as follows:

**SUMMARY**

This matter relates to the design and construction of a hotel in Austin, Texas. LodgeWorks seeks a preliminary injunction or order compelling arbitration to force a pending arbitration between the parties to take place in Wichita, Kansas. Since proper venue is in Texas, based on a voidable forum selection clause contained in the applicable contract, this Court respectfully lacks jurisdiction over this matter. To the extent any court has jurisdiction over this matter, it would only be a district court in Texas. In any event, the requested relief is not warranted and is not necessary. Jordan is already arbitrating with LodgeWorks, meaning LodgeWorks cannot satisfy the initial prerequisite to be entitled to relief under the Federal Arbitration Act (i.e., that LodgeWorks be aggrieved by Jordan's failure, neglect, or refusal to arbitrate). Venue is also a procedural matter, within the power of an arbitrator to decide—and Jordan has asked the arbitrator to decide it. Other factors, such as the risk of harm and balancing

the equities, also favor not granting the relief sought by LodgeWorks. LodgeWorks should be bound by the contract it agreed to, which provides that Texas law controls. Texas law requires that venue be in Texas. These are issues that the arbitrator can, and should, address.

## EXHIBITS

Jordan submits the following exhibits with this response for consideration by the Court:

| | |
|---|---|
| Exhibit 1 | Demand for Arbitration (filed by LodgeWorks L.P. in AAA Case No. 57 110 Y 00094 11) |
| Exhibit 2 | Response to Demand for Arbitration (filed by C.F. Jordan Construction L.L.C. in AAA Case No. 57 110 Y 00094 11) |
| Exhibit 3 | C.F. Jordan Construction's Objection to Hearing Locale and Choice of Law (filed by C.F. Jordan Construction L.L.C. in AAA Case No. 57 110 Y 00094 11) |
| Exhibit 4 | Demand for Arbitration (filed by C.F. Jordan Construction L.L.C. in AAA Case No. 70 110 Y 00584 11) |
| Exhibit 5 | Request for Consolidation Pursuant to Rule R-7 of the Construction Industry Arbitration Rules (filed by C.F. Jordan Construction L.L.C. in AAA Case No. 57 110 Y 00094 11 and AAA Case No. 70 110 Y 00584 11) |
| Exhibit 6 | Construction Industry Arbitration Rules and Mediation Procedures of the American Arbitration Association (R-7 and R-12) |

## STATEMENT OF THE FACTS

### Factual Background

LodgeWorks and Jordan entered into a Design/Build Agreement dated July 16, 2008 and a project addendum (collectively "the Contract"), under which Jordan was to provide design and construction services for LodgeWorks in the development of a 140-room hotel in Austin, Texas ("the Project"). *See* Dkt. No. 1 (Ex. A, B). The Contract contained the following provisions that are relevant to the issues currently before the Court:

> 39. Arbitration. All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof, shall be decided in Wichita, Kansas by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, **unless the parties mutually agree otherwise**.... Dkt. No. 1 (Ex. A (Sec. 39)) (emphasis added).
>
> * * * * *
>
> 42. Applicable Law. This Agreement shall be governed by and construed under the laws of the State of Kansas (excluding conflict of laws principles), **unless otherwise required by the laws of the state in which the Project is located** or otherwise agreed in the Project Addendum for a particular Project. Dkt. No. 1 (Ex. A (Sec. 42)) (emphasis added).

It is apparent, based on the express language of the Contract, that LodgeWorks and Jordan agreed that any arbitration would be in Wichita, Kansas "unless the parties mutually agree[d] otherwise." *See* Dkt. No. 1 (Ex. A (Sec. 39)). The parties did just that—agreeing that Texas law would govern if Texas law so required. *See* Dkt. No. 1 (Ex. A (Sec. 42)). As addressed below, Texas law requires both that Texas law governs and that arbitration take place in Texas.

Following completion of the Project, LodgeWorks alleged that there were water leak issues at the Project. *See* Dkt. No. 1 (¶¶ 18, 20). LodgeWorks blames Jordan for those issues. *See* Dkt. No. 1 (¶ 21).

**Procedural Background**

On August 1, 2011, LodgeWorks filed an arbitration demand with the American Arbitration Association ("the AAA") complaining about Jordan. *See* Ex. 1; Dkt. No. 1 (¶ 23). In its demand, LodgeWorks stated that the hearing locale requested was "Wichita, Kansas (by contract)." Ex. 1; *see also* Dkt. No. 1 (¶ 23). On August 23, 2011, Jordan filed its response to the arbitration demand as well as an objection to the locale and choice of law sought by LodgeWorks. *See* Ex. 2; Ex. 3.

On August 29, 2011, Jordan filed an arbitration demand with the AAA asserting derivative claims against various subcontractors of Jordan, including the party responsible for the design portion of the Project. *See* Ex. 4. In its demand, Jordan stated that the hearing locale requested was Austin, Texas. *See* Ex. 4. Jordan's claims are primarily contingent on LodgeWorks prevailing on its claims against Jordan. *See* Ex. 4.

As noted by LodgeWorks, Jordan did file a petition in state district court in Texas seeking declaratory relief and an injunction. *See* Dkt. No. 7 (Ex. D). However, that lawsuit has been dismissed, and no such matters are currently pending in state district court in Texas.

On September 23, 2011 and pursuant to the arbitration rules of the AAA, Jordan filed a request to have both arbitrations consolidated. *See* Ex. 5. That request is still pending, and the AAA has not made a ruling on Jordan's request.

On October 14, 2011, LodgeWorks filed this action, seeking a declaratory judgment as to the venue for arbitration and the controlling law. *See* Dkt. No. 1. On October 19, 2011, LodgeWorks filed its motion for preliminary injunction seeking an injunction pursuant to the Federal Arbitration Act ("the FAA"), and its briefing was submitted shortly thereafter. *See* Dkt. No. 3; Dkt. No. 7.

## STATEMENT OF THE QUESTIONS PRESENTED

Question No. 1 — Does this Court have jurisdiction to issue the requested injunction or order compelling arbitration?

Question No. 2 — Should this Court issue the requested injunction or order compelling arbitration?

## ARGUMENT AND AUTHORITIES

The issuance of a preliminary injunction or an order compelling arbitration is neither authorized nor necessary in this case, as shown below.

## I. THIS COURT DOES NOT HAVE JURISDICTION TO ISSUE AN INJUNCTION OR TO OTHERWISE COMPEL ARBITRATION AS ANY SUCH RULING MUST BE ENTERED BY A DISTRICT COURT IN TEXAS

LodgeWorks requests a preliminary injunction from this Court based on Section 4 of the FAA. *See* Dkt. No. 7. But in this case, the proper court to hear this matter, if there is one, is a federal court in Texas. Generally, the proper court to hear LodgeWorks' claim is "any United States district court which, save for such [arbitration] agreement, would have jurisdiction under Title 28."[1] But where a forum selection clause is at issue, the proper court to hear the claim is a district court in the selected forum. As held by the Tenth Circuit Court of Appeals:

> [W]e agree with plaintiffs and the district court that a third approach taken by a majority of courts is the correct approach. This majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4. In other words, "a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration." Any other result renders meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district.[2]

In this case, as is provided for in the Contract, the selected forum is Texas.

The cases relied on by LodgeWorks actually support Jordan's position as the Contract provides that the proper forum for any arbitration is in Texas—not Kansas. As noted above, the Contract provides that any arbitration arising under the Contract will take place in Wichita, Kansas "unless the parties mutually agree otherwise...." Dkt. No. 1 (Ex. A (Sec. 39)). LodgeWorks and Jordan did, in fact, mutually agree otherwise. They did so in the Contract itself. The Contract provides that "[t]his Agreement shall be governed by and construed under the laws of the State of Kansas ... unless otherwise required by the laws of the state in which the Project is located...." Dkt. No. 1 (Ex. A (Sec. 42)). As noted in LodgeWorks' brief, Texas law does, in

---

[1] 9 USCS § 4.

[2] Ansari v. Qwest Communs. Corp., 414 F.3d 1214, 1219-1220 (10th Cir. 2005) (internal citations omitted).

fact, require otherwise.

Section 35.52 of the Texas Business & Commerce Code (which remained in effect until April 1, 2009 and was then recodified, substantively unchanged, as Sections 272.001 and 272.002 of the Texas Business & Commerce Code) addresses choice of law and forum selection matters with respect to construction contracts:

> Sec. 35.52. LAW APPLICABLE TO CONSTRUCTION CONTRACTS.
>
> (a) If a contract is principally for the construction or repair of improvements to real property located in this state and the contract contains a provision that makes the contract or any conflict arising under it subject to the law of another state, to litigation in the courts of another state, or to arbitration in another state, that provision is voidable by the party that is obligated by the contract to perform the construction or repair.
>
> (b) A contract is principally for the construction or repair of improvements to real property located in this state if the contract obligates a party, as its principal obligation under the contract, to provide labor, or labor and materials, for the construction or repair of improvements to real property located in this state as a general contractor or subcontractor.[3]

To avoid any confusion on the matter, Jordan (the party obligated by the Contract to perform construction services) intends and seeks to void the provisions of the Contract attempting to make the Contract or any conflict arising under the Contract subject to Kansas law and arbitration in Kansas—specifically portions of Sections 39 and 42 of the Contract referencing Kansas law and Kansas as the selected forum for any arbitration.

The Contract is undoubtedly one that "is principally for the construction or repair of an improvement to real property" located in Texas. The Project was in Texas. *See* Dkt. No. 1 (Ex. A, B). And despite the design/build nature of the Contract, it is principally for the construction of an improvement to real property as it "obligates a party, as the party's principal obligation under

[3] *See* Tex. Bus. & Com. Code § 35.52(a), (b) (2008); *see also* Tex. Bus. & Com. Code §§ 272.001, 272.002 (2011)

the contract, to provide labor or labor and materials as a general contractor or subcontractor for the construction or repair of an improvement to real property" in Texas.[4] *See* Dkt. No. 1 (Ex. A, B). The total value of the Contract was $13,457,128. *See* Dkt. No. 1 (Ex. B (Sec. 2)). The design portion of the work under the Contract was valued at $487,700. *See* Dkt. No. 1 (Ex. B (Attachment 1)). In contrast, the construction portion of the work under the Contract was valued at $12,969,428. *See* Dkt. No. 1 (Ex. B (Ex. D)). Certainly the Contract was principally one for the provision of labor or labor and materials with Jordan as a general contractor for the Project.

Pursuant to the Contract, the parties agreed to have any arbitration take place in Wichita, Kansas unless they agreed otherwise. The parties agreed that Kansas law would govern, unless Texas law required otherwise. Texas law, specifically Section 35.52 (now Section 272.001) of the Texas Business & Commerce Code as invoked by Jordan, does require otherwise—making Texas law applicable and Texas the appropriate forum for any arbitration between LodgeWorks and Jordan relating to the Contract.

As Texas is the appropriate forum for any arbitration between the parties, only a federal district court in Texas may decide whether injunctive relief or an order compelling arbitration under Section 4 of the FAA is appropriate.

## II. LodgeWorks is not entitled to a preliminary injunction or order compelling arbitration in Wichita, Kansas

While LodgeWorks generally states the law concerning preliminary injunctions correctly, it cannot establish the equitable factors necessary to be entitled to such relief. Those factors are as follows: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be

[4] *See* Tex. Bus. & Com. Code § 35.52(b) (2008); *see also* Tex. Bus. & Com. Code § 272.002(a) (2011).

adverse to the public interest.[5] As a preliminary injunction is an extraordinary remedy, the right to that relief must be clear and unequivocal.[6]

**A. LodgeWorks does not have a substantial likelihood of success on the merits**

As noted by LodgeWorks, to show a probability of success (a substantial likelihood of success on the merits), a movant must show "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation."[7] In this case, LodgeWorks is unable to show that it has a substantial likelihood of success on the merits. The law simply supports Jordan, making it impossible for LodgeWorks to succeed on the merits of its claims.

***1. Jordan has not failed, neglected, or refused to arbitrate***

The first sentence of Section 4 of the FAA expressly requires that a party be "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to warrant an order compelling arbitration.[8] In fact, the Second Circuit Court of Appeals has repeatedly held that relief under Section 4 of the FAA is limited to actually aggrieved parties.[9] The Second Circuit Court of Appeals has expressly held that "[t]he phrase 'failure, neglect, or refusal' was included in the first line of 9 U.S.C. § 4 … primarily to assure that the remedy which Congress was affording would not be available before there had been a demand to arbitrate and a refusal."[10]

United States District Courts have taken similar views. The United States District Court for the Southern District of Texas has recognized that "9 U.S.C. § 4 only creates a cause of

---

[5] *See* Beltronics USA Inc. v. Midwest Inventory Distrib. L.L.C., 562 F.3d 1067, 1070 (10th Cir. 2009).
[6] *See Beltronics USA*, 562 F.3d at 1070.
[7] Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1199 (10th Cir. 1992).
[8] *See* 9 USCS § 4.
[9] *See e.g.* Jacobs v. USA Track & Field, 374 F.3d 85, 88-89 (2d Cir. 2004); Downing v. Merrill Lynch, Pierce, Fenner & Smith Inc., 725 F.2d 192, 195 (2d Cir. 1984); Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568, 572 n.3 (2d Cir. 1968).
[10] *Trafalgar Shipping*, 401 F.2d at 572.

action when a party is 'aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement.'"[11] The United States District Court for the Northern District of Florida has noted that "Section 4 only grants a remedy to 'a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate.' In other words, Defendants could not have brought an action to compel arbitration unless they were first aggrieved by Plaintiff's resistance to participating in the arbitration."[12] Even this Court has recognized that "whether an arbitration should then be compelled is a distinct question, proper only where there is an, 'alleged failure, neglect, or refusal of another to arbitrate under a written agreement.'"[13] The United States District Court for the Southern District of New York has addressed a situation very similar to this one, and held as follows:

> The parties also disagree about where arbitration proceedings should be held. Although the AAA has determined that they should be held in Maryland, Aaacon cross-moves pursuant to 9 U.S.C. § 4 to compel arbitration in New York City.... In any case, Aaacon is not entitled under section four to an order compelling arbitration in New York City or anywhere else because Aaacon is not, as it must be to invoke section four, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." Barnes has not failed, neglected, or refused to arbitrate. On the contrary, he has already made a demand for arbitration of his own claims before the AAA and now moves to stay this action so that all claims arising from the transportation agreement may be arbitrated together in Maryland, which the AAA has determined is the appropriate locale for the hearings. The arbitration clause states that proceedings thereunder are to be held before the AAA "pursuant to its rules." There is no allegation that Barnes has breached this provision; indeed, on the contrary, he has invoked the arbitral procedure, as already noted. Accordingly, Aaacon is not a "party aggrieved" within the meaning of 9 U.S.C. § 4 and its cross-motion to compel arbitration in New York City is denied.[14]

To state the law another way, the FAA only allows for an order compelling arbitration where a

[11] Tucker v. Fireman's Fund Agribusiness Inc., 365 F. Supp. 2d 821, 823 (S.D. Tex. 2005).
[12] Citigroup Global Mkts. v. Berggren, No. 1:06-cv-1075-WAD, 2006 U.S. Dist. LEXIS 84146 (N.D. Ga. Nov. 20, 2006).
[13] Bank of Commerce & Trust Co. v. Aichholz, No. 03-1206-WEB, 2003 U.S. Dist. LEXIS 20886, *5 (D. Kan. Nov. 18, 2003).
[14] Aaacon Auto Transport Inc. v. Barnes, 603 F. Supp. 1347, 1349 (S.D.N.Y. 1985).

movant is aggrieved by the "failure, neglect, or refusal" by a respondent to arbitrate.

In this case, LodgeWorks has not been aggrieved by any "failure, neglect, or refusal" by Jordan to arbitrate. As stated above, LodgeWorks filed an arbitration demand with the AAA complaining about Jordan. *See* Ex. 1. Jordan filed its response to the arbitration demand, as well as an objection to the locale and choice of law sought by LodgeWorks. *See* Ex. 2; Ex. 3. Quite the opposite of failing, neglecting, or refusing to arbitrate, Jordan has actively participated in the arbitration. Jordan has made an appearance and filed a response to the arbitration demand. *See* Ex. 2. And Jordan has sought to avail itself of the governing rules of the AAA and has objected to the locale and choice of law. *See* Ex. 3; Ex. 5.

Any contention that Jordan has somehow failed, neglected, or refused to arbitrate is baseless. And due to the fact that there has been no failure, neglect, or refusal by Jordan, LodgeWorks certainly has not been aggrieved by such actions. Furthermore, the AAA has not entered any ruling on Jordan's objections to LodgeWorks' requested locale or governing law—further evidence that LodgeWorks has not been aggrieved. As the initial conditions have not been met, LodgeWorks simply does not have standing under Section 4 of the FAA to seek an injunction or order compelling arbitration. That fact alone shows that LodgeWorks does not have a substantial likelihood of success on the merits.

**2. *The arbitrator is the proper party to decide procedural issues such as venue for any arbitration***

Additionally, the power to decide the locale of arbitration is a power that rests squarely with an arbitrator. The United States Supreme Court has held in *Howsam v. Dean Witter Reynolds* that "'procedural' questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide."[15] The *Howsam*

[15] Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002).

court also recognized that arbitrators who are "comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it."[16] In *Green Tree Financial Corporation v. Bazzle* the United States Supreme Court addressed "what kind of arbitration proceeding the parties agreed to" and held that such a question "concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide."[17]

Recently the Second Circuit Court of Appeals has recognized that "venue is a procedural issue that … arbitrators should address in the first instance, and that the District Court lacked subject matter jurisdiction to resolve it" and "[r]elying on *Howsam* and *Green Tree*, the First and Fourth Circuits have both held that disputes over the interpretation of forum selection clauses in arbitration agreements raise presumptively arbitrable procedural questions."[18] The Eleventh Circuit Court of Appeals has similarly deferred to arbitrators' ability to address a forum selection clause:

> If the AMEX Constitution actually contained a venue-selection provision, Dean Witter could raise that fact before the arbitrators. The arbitrators would presumably enforce the venue-selection clause in precisely the same way that a court would. Consequently, declaratory relief would be unnecessary, and the district court would be within its discretion in denying it.[19]

United States District Courts have similarly recognized that venue issues (and choice of law

---

[16] *Howsam*, 537 U.S. at 85.
[17] Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452-453 (U.S. 2003).
[18] UBS Fin. Servs. v. W. Va. Univ. Hosps. Inc., No. 11-235-cv, 2011 U.S. App. LEXIS 19420, *34-35 (2d Cir. Sept. 22, 2011); *see also* Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 5 (1st Cir. 2004); Cent. W. Va. Energy Inc. v. Bayer Cropscience L.P., 645 F.3d 267, 273-274 (4th Cir. 2011).
[19] McCullagh v. Dean Witter Reynolds, Inc., 177 F.3d 1307, 1310 (11th Cir. 1999) (internal citations omitted).

issues) are proper for arbitrators to decide.[20]

As noted previously, any arbitration between LodgeWorks and Jordan concerning the Contract is governed by the AAA rules. LodgeWorks expressly agreed to the AAA rules in the Contract, which provides that all claims will be decided "by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining...." Dkt. No. 1 (Ex. A (Sec. 39)). And the AAA rules already provide a framework to address the issue of location for the arbitration hearing. *See* Ex. 6. Specifically, R-12 of the AAA rules provide as follows:

> R-12. Fixing of Locale (the city, county, state, territory and, if applicable, country of the arbitration)
>
> The parties may mutually agree to the locale where the arbitration is to be held. Any disputes regarding the locale must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA. Disputes regarding locale shall be determined in the following manner:
>
> (a) When the parties' arbitration agreement is silent with respect to locale and the parties are unable to agree upon a locale, the locale shall be the city nearest to the site of the project in dispute, as determined by the AAA, subject to the power of the arbitrator to finally determine the locale within 14 calendar days after the date of the preliminary hearing.
>
> (b) When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, the locale shall be that specified in the arbitration agreement.
>
> (c) If the reference to a locale in the arbitration agreement is ambiguous and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale within 14 calendar days after the date of the preliminary hearing.
>
> The arbitrator, at the arbitrator's sole discretion, shall have the authority to

[20] *See e.g.* J.P. Morgan Secs. v. La. Citizens Prop. Ins. Corp., 712 F. Supp. 2d 70, 74 (S.D.N.Y. 2010); Cohen v. Chase Bank, N.A., 679 F. Supp. 2d 582, 596 (D.N.J. 2010); J.W. Burress Inc. v. John Deere Constr. & Forestry Co., No. 7:07-CV-00310, 2007 U.S. Dist. LEXIS 76350, *3-5 (W.D. Va. Oct. 15, 2007); Westbrook Int'l L.L.C v. Westbrook Techs., 17 F. Supp. 2d 681, 685 ( E.D. Mich. 1998).

> conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process. Ex. 6 (R-12).

The AAA rules also contain standards regarding consolidation and joinder. *See* Ex. 6 (R-7).

The Contract contains a thorough arbitration clause that incorporates the AAA rules, which can surely address the venue and forum selection disputes at issue. The law and the AAA rules plainly place the power to address venue and locale of any arbitration in the hands of the arbitrators. In the arbitration, Jordan has filed an objection to venue selected by LodgeWorks, and that request is pending. *See* Ex. 3. The Court should allow the agreed AAA process to work, and allow the parties to proceed with arbitration as they intended without court intervention. Contrary to LodgeWorks' assertion, it does not have a strong likelihood of success on the merits given the authority cited above and the broad power that arbitrators have over procedural matters.

**3. *LodgeWorks' argument fails to recognize that the parties agreed that Texas law would govern and that Texas law makes Texas the proper forum for any arbitration***

For purposes of this argument, the Court is respectfully reminded that Section 35.52 of the Texas Business & Commerce Code (2008) and Sections 272.001 and 272.002 of the Texas Business & Commerce Code (2011) are substantively identical. The argument below refers to Section 272.001 for the convenience of the Court and to be consistent with the arguments presented by LodgeWorks. The same arguments below concerning Sections 272.001 and 272.002 would apply equally to Section 35.52.

LodgeWorks misses the mark in arguing about preemption and its effects on Section 272.001 of the Texas Business & Commerce Code. Jordan's position is not that Section 272.001 trumps the agreement of the parties. Rather, Jordan's position is that Section 272.001 is entirely consistent with the agreement of the parties and that Texas is, therefore, the proper forum for any

arbitration. This issue is discussed in greater detail in the prior section (section I of the Argument and Authorities), and is incorporated by reference here. Basically, pursuant to the Contract, the parties agreed to have any arbitration take place in Wichita, Kansas **unless they agreed otherwise**. The parties agreed that Kansas law would govern, **unless Texas law required otherwise**. Texas law, as invoked by Jordan, does require otherwise—making Texas law applicable and Texas the appropriate forum for any arbitration between LodgeWorks and Jordan relating to the Contract.

The cases relied on by LodgeWorks are simply inapplicable. For example, in the case of *OPE International L.P. v. Chet Morrison Contractors Inc.*, the applicable contract provided that Texas law would govern and that arbitration would be in Texas.[21] The *OPE* court found that arbitration was properly compelled despite a Louisiana statute that sought to void clauses requiring arbitration outside of Louisiana.[22] The other cases cited by LodgeWorks suffer from the same fatal distinction from this case—each case involved a conflict between applicable state law and the forum selection language contained in an arbitration agreement.

That is not the case here as there is no conflict. In this case, LodgeWorks agreed to Texas law based on the language of the Contract and the application of Section 272.001. Therefore, LodgeWorks agreed to have Texas law control, and Texas law requires arbitration in Texas. The selected forum is in Texas. There is no conflict between Section 272.001 and the forum selection language of the Contract. Jordan simply asks the Court to rely on the language of the Contract, as properly applied in relation to Section 272.001.

**B. LodgeWorks will not suffer irreparable harm if the injunction is denied**

In arguing that LodgeWorks will suffer irreparable harm if an injunction is not issued,

---

[21] *See* OPE Int'l L.P. v. Chet Morrison Contrs. Inc., 258 F.3d 443, 444-445 (5th Cir. 2001).
[22] *See OPE Int'l*, 258 F.3d at 447.

LodgeWorks merely states that its purported risk is that "absent this Court's order, a Texas state court will decide whether a Texas statute voids the arbitration clause and on that basis order the arbitration to be held in Austin." Dkt. No. 7 (p. 10). LodgeWorks' own brief shows how low this "risk" is, and in any event the issue is moot.

As an initial matter, Jordan has dismissed the state court action in Texas. As it is the existence of the state court action in Texas that serves as LodgeWorks' sole basis for its supposed risk of irreparable harm, the dismissal of that case means LodgeWorks is unable to show one of the essential factors to be entitled to injunctive relief.

Even if the case was pending, there is no risk of irreparable harm. On page three of its briefing, LodgeWorks itself recognizes that, with respect to the state court action in Texas, "LodgeWorks has filed its answer, but no other proceedings have been scheduled or conducted in the Texas action." LodgeWorks claims irreparable harm if an injunction is not issued, but at the same time recognizes that nothing is happening in the state court action in Texas. LodgeWorks, perhaps due to its lack of faith in its own claim, also ignores the possibility (however slim it may be) that it could prevail in the state court action in Texas. And LodgeWorks ignores the fact that Texas also has appellate courts that serve to address incorrect rulings made by state district courts. Most importantly, LodgeWorks ignores the fact that this matter is currently pending before the AAA, pursuant to the AAA rules. *See* Ex. 3; Ex. 5. The AAA may side with LodgeWorks, or the AAA may side with Jordan on this issue. All of these factors strongly support the contention that LodgeWorks would not be irreparably harmed if an injunction is not issued. Rather, LodgeWorks may not be harmed at all, even if it loses on the issue. An injunction simply is not warranted.

### C. The balance of equities does not tip in LodgeWorks' favor—LodgeWorks' threatened injury does not outweigh the injury Jordan will suffer under the injunction

As discussed in detail above, Texas is the appropriate forum for any arbitration between the parties based on the terms of the Contract and Texas law.[23] Dkt. No. 1 (Ex. A (Sec. 39, 42)). It is Jordan—not LodgeWorks—that will be harmed if the Court issues the injunction that LodgeWorks requests. The equities actually favor allowing the AAA and the arbitrator to address these issues as provided for by the AAA rules. *See* Ex. 6 (R-7; R-12). To issue the injunction requested by LodgeWorks will injure Jordan by depriving it of its right to have these matters decided in arbitration—as was plainly intended by the parties when they agreed to arbitrate pursuant to the AAA rules. *See* Dkt. No. 1 (Ex. A (Sec. 39)).

Since equity is a consideration, Jordan wishes to emphasize the nature of the Project. While LodgeWorks may be located in Kansas, it engaged in business in Texas (the development of a substantial hotel project). Jordan is in Texas, the vast majority if not all of Jordan's subcontractors are in Texas, and the Project was in Texas. While there may be a dispute as to the requirements of the Contract, the AAA is fully able to address these matters pursuant to its own rules, and equity would seem to suggest that arbitration in Texas makes sense.

LodgeWorks does not have any real threatened injury as Jordan merely wants the Contract to be upheld and for the AAA to decide these matters. The injunction requested by LodgeWorks would injure Jordan by depriving it of its contractual rights. Furthermore, the injunction requested by LodgeWorks is based on nothing more than speculation and hypothetical outcomes. LodgeWorks' subjective fears and lack of faith in its own position should not be used as a basis to find the equities tipping in LodgeWorks' favor.

---

[23] *See* Tex. Bus. & Com. Code § 35.52(a), (b) (2008); *see also* Tex. Bus. & Com. Code § 272.001 (2011).

**D. Any injunction on these issues would be adverse to the public interest**

As LodgeWorks notes in its briefing, contract language should be upheld. *See* Dkt. No. 7 (p. 12). This is exactly what Jordan is requesting be done. The terms of the Contract should be upheld, and the AAA should be permitted to resolve these issues. Court intervention is neither needed nor warranted. An injunction on these facts would be adverse to the public interest, as an injunction is an extraordinary remedy available only when the right to such relief is clear and unequivocal.[24] For the reasons set forth above, LodgeWorks has failed to show that any right it may have to such extraordinary relief is clear and unequivocal. Injunctions should not be used as a tool by a party who has numerous avenues of relief available and where such party is only being requested to abide by the terms of a contract it voluntarily entered into.

**E. An order compelling arbitration would be inappropriate**

For all of the reasons set forth above, an order compelling arbitration would be inappropriate. The following summarizes the reasons why an order compelling arbitration is unnecessary: (1) LodgeWorks has not been aggrieved by any failure, neglect, or refusal of Jordan as no such failure, neglect, or refusal has occurred—Jordan is arbitrating with LodgeWorks; (2) the arbitrator is the proper party to decide procedural issues such as venue for arbitration and the agreed-upon procedures under the AAA rules should be followed; and (3) Jordan has dismissed the state court action pending in Texas and is prepared to have all matters ruled on by the arbitrators. As with a preliminary injunction, an order compelling arbitration is also unnecessary.

**PRAYER**

C.F. Jordan Construction L.L.C. requests that LodgeWorks' Motion for Preliminary Injunction be denied and that C.F. Jordan Construction L.L.C. be granted such other remedies, both legal and equitable, to which it may show itself entitled.

---

[24] *See* Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir. 2009).

Respectfully submitted,

By: *s/ Jeffrey D. Leonard*

Jeffrey D. Leonard, #14905
**TRIPLETT WOOLF & GARRETSON L.L.C.**
2959 North Rock Road, Suite 300
Wichita, Kansas 67226
Telephone: 316.630.8100
Facsimile: 316.630.8101
jdleonar@twgfirm.com

and

Jason C. Spencer, *Admitted Pro Hac Vice*
**FORD NASSEN & BALDWIN P.C.**
111 Congress Ave., Suite 1010
Austin, Texas 78701
Telephone: 512.236.0009
Facsimile: 512.236.0682
jcspencer@fordnassen.com
Texas State Bar No. 00789755

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Wyatt A. Hoch
Kyle J. Steadman
Bradley D. Serafine
Foulston Siefkin L.L.P.
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
whoch@foulston.com
ksteadman@foulston.com
bserafine@foulston.com
*Attorneys for Plaintiff*

By: */s Jeffrey D. Leonard*
Jeffrey D. Leonard, #14905