# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LODGEWORKS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 11-1317-KHV-GLR |
| C.F. JORDAN CONSTRUCTION, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### NOTICE

Within fourteen days after a party is served with a copy of this Report and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, file written objections to the Report and Recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or the recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

### REPORT AND PROPOSED FINDINGS

By Order of October 31, 2011, the District Court referred Lodgeworks' Motion for Preliminary Injunction (ECF No. 3) for report and recommendation. The parties thereafter completed the briefing on the motion by filing a response (ECF No. 13) and a reply (ECF No. 18). On November 16, 2011, the Court heard oral argument on the motion. Plaintiff Lodgeworks, L.P. appeared through its attorney Wyatt A. Hoch. Defendant C.F. Jordan Construction, LLC appeared through counsel Jason C. Spencer and Jeffrey D. Leonard. For the reasons stated below, the motion should be granted.

## I.      BACKGROUND FACTS

In July 2008, the parties entered into a written contract for Defendant to provide design and construction services for Plaintiff in the development of hotels throughout the United States.  The contract includes provisions for arbitration (¶ 39)[1] and choice of law (¶ 42).[2]  In August 2008 the parties executed a Project Addendum for the design and construction of a hotel in Texas.  The addendum became part of the original contract and did not alter the noted provisions.  Design and construction defects allegedly caused several million dollars of water damage after the hotel opened in late 2009.

On August 1, 2011, Plaintiff filed a Demand for Arbitration with the American Arbitration Association (AAA) and requested a hearing (hereinafter Lodgeworks-Jordan hearing) in Wichita, Kansas.  On August 23, 2011, Defendant objected to that location.  As grounds for its objection, Defendant asserted that Texas law allows it to void the arbitration provision.  Three days later, Defendant commenced a declaratory judgment action in a Texas state court to prevent enforcement of the arbitration venue and choice-of-law provisions.  On August 29, 2011, Defendant filed an arbitration demand with AAA.  It thereby requested a hearing in Texas for derivative claims against various subcontractors.  The derivative claims are primarily contingent on Plaintiff's prevailing in its claims against Defendant.  About a month later Defendant requested that AAA consolidate the

---

[1]Paragraph 39 provides in pertinent part:  "All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof, shall be decided in Wichita, Kansas by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, unless the parties mutually agree otherwise."  *See* Ex. A attached to Compl. (ECF No. 1).

[2]Paragraph 42 provides:  "This Agreement shall be governed by and construed under the laws of the State of Kansas (excluding conflict of laws principles), unless otherwise required by the laws of the state in which the Project is located or otherwise agreed in the Project Addendum for a particular Project."  *See id.*

two arbitrations.

This series of events prompted Plaintiff to file its present complaint before this Court to determine the proper venue and controlling law for construction arbitration under § 4 of the Federal Arbitration Act (FAA), Title 9 of the United States Code.[3]  Pursuant to Fed. R. Civ. P. 65(a) and D. Kan. Rule 65.1, Plaintiff seeks a preliminary injunction to prevent Defendant (1) from seeking to conduct the Lodgeworks-Jordan hearing in any location other than Wichita and under controlling law other than Kansas and (2) from asking the AAA to hold the arbitration hearing in Texas under Texas law.

## II.    JURISDICTION

Without conceding that this case is properly brought under 9 U.S.C. § 4, Defendant argues that this Court lacks jurisdiction to issue an injunction or to otherwise compel arbitration under § 4.l.  As grounds for its argument, Defendant asserts Plaintiff has filed this action in the wrong forum.[4]  Accordingly, the Court first addresses this jurisdictional matter.[5]

Section 4 of the FAA prescribes the procedure for petitioning a federal district court for an order to compel arbitration as contemplated in a written agreement for arbitration.[6]  It provides in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy

---

[3]Mot. at 1-2; Brief Supp. Lodgeworks' Mot. (ECF No. 7) at 1, 4.

[4]Def.'s Resp. Opp'n (ECF No. 13) at 5-6.

[5]*See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1187 (2010) (addressing jurisdictional objection at the outset).

[6]*Vaden v. Discover Bank*, 129 S. Ct. 1262, 1278 (2009).

between the parties, for an order directing that such arbitration proceed in the manner
provided for in such agreement.

As recognized by Defendant, when parties have "agreed to arbitrate in a particular forum only a

district court in that forum has authority to compel arbitration under § 4."[7]  Section 4, however,

"does not enlarge the jurisdiction of the federal courts."[8]  Instead, it "provides for an order compel-

ling arbitration only when the federal district court would have jurisdiction over a suit on the under-

lying dispute; hence, there must be diversity of citizenship or some other independent basis for

federal jurisdiction before the order can issue."[9]  The Tenth Circuit has likewise recognized that §

4 is "not a jurisdictional prerequisite," but is a venue requirement that is subject to waiver.[10]  Defen-

dant mistakenly confuses jurisdiction and venue.  To the extent it argues that this Court lacks juris-

diction over this case, its argument has no merit.  The briefing on the motion provides no reason to

question the jurisdiction of this Court.[11]

## III.    JUDICIAL VENUE

Although framing it as a jurisdictional issue, Defendant argues that this Court is not the

---

[7]*Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005).

[8]*Vaden*, 129 S. Ct. at 1278 n.19.

[9]*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 n.32 (1983); *accord Hall St.
Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) (recognizing that the FAA "bestow[s]
no federal jurisdiction but rather requir[es] an independent jurisdictional basis").

[10]*Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1047 (10th Cir. 2006).

[11]Plaintiff invokes two bases for federal subject matter jurisdiction:  (1)  28 U.S.C. § 1331 on
grounds that its cause of action arises under 9 U.S.C. § 4 and (2) 28 U.S.C. § 1332 on grounds of
complete diversity between the parties and an amount in controversy that exceeds $75,000.  *See*
Compl. ¶ 5.  Although *Vaden* and *Hall St. Assocs.* may call into question federal question juris-
diction, neither the briefing before the Court nor the submitted complaint raises a question as to
diversity jurisdiction.

proper judicial venue for this action.[12]  More specifically it contends that, to the extent this case

belongs in federal court, Plaintiff should have filed it in a federal district court in Texas.[13]  Like

jurisdiction, venue is a threshold matter that needs early attention.  The Court should determine,

therefore, whether it is the proper judicial forum for this action.[14]

Based on ¶¶ 39 and 42 of the contract and through the application of Texas law, Defendant

argues that venue properly lies in Texas.  Under ¶ 39, the parties agreed that arbitration would take

place in Kansas, unless they mutually agreed otherwise.  In the context of this case, the parties

agreed in ¶ 42 that Kansas law would apply to disputes arising under the contract, unless otherwise

required by the laws of Texas.  Using the two "unless" clauses, Defendant argues that Tex. Bus. &

Com. Code Ann. § 35.52(a) (Vernon 2008) (recodified as Tex. Bus. & Com. Code Ann. § 272.001

(Vernon 2011)),[15] applies "to void the provisions of the Contract attempting to make the Contract

[12]*See* Def.'s Resp. Opp'n at 5-7.

[13]*See id.* at 5.

[14]This issue is distinct from whether the federal courts have authority under the FAA to determine the proper location for arbitration between the parties.  The latter issue is considered later in this report and recommendation.

[15]Section 35.52(a) of the Texas Business and Commerce Code remained in effect until April 1, 2009, when it was recodified, substantially unchanged as § 272.001.  Section 35.52 set forth Texas law applicable to construction contracts:

> If a contract is principally for the construction or repair of improvements to real property located in this state and the contract contains a provision that makes the contract or any conflict arising under it subject to the law of another state, to litigation in the courts of another state, or to arbitration in another state, that provision is voidable by the party that is obligated by the contract to perform the construction or repair.

Section 272.001 provides:

> (a)  This section applies only to a contract that is principally for the construction or repair of an improvement to real property located in this state.
> (b)  If a contract contains a provision making the contract or any conflict arising under the contract subject to another state's law, litigation in the courts of another

(continued...)

or any conflict arising under the Contract subject to Kansas law and arbitration in Kansas – specifically portions of Sections 39 and 42 of the Contract."[16]  Defendant accordingly concludes that venue properly lies in Texas.

Plaintiff argues that the Texas statute cannot alter the terms and enforceability of the arbitration provision, because the FAA preempts that statute.[17]  By "enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[18]  Section 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

This provision mandates enforcement of arbitration agreements with only two limitations:  (1) the arbitration provision must be written within a maritime contract or one showing a commercial transaction and (2) the provisions may only be on "grounds as exist at law or in equity for the revocation of any contract."[19]  Nothing in the FAA indicates "that the broad principle of enforce-

---

[15](...continued)
state, or arbitration in another state, that provision is voidable by the party obligated by the contract to perform the construction or repair.

[16]Def.'s Resp. Opp'n at 6.

[17]Brief Supp. Lodgeworks' Mot. at 7-10.

[18]*Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

[19]*Id.* at 10-11.

ability is subject to any additional limitations under State law."[20]

To the contrary, by "creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."[21]  When a state attempts to place arbitration agreements on unequal "footing" by statutorily imposing requirements for such agreements that are inapplicable to other contracts, the additional requirements conflict with § 2 of the FAA.[22]  Although the FAA "contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration," it may preempt state law that "actually conflicts" with the FAA – "that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[23]

The instant contract contains an arbitration provision and involves commerce.  Accordingly, the FAA applies to it.  But Texas law (both §§ 35.52(a) and 272.001) allows one party to the arbitration agreement to unilaterally void the provision that subjects a dispute to arbitration outside of Texas.[24]  The Fifth Circuit has found that the FAA preempts a Louisiana statute that automatically declares null and void any provision requiring arbitration to be conducted outside of Louisiana.[25]

---

[20]*Id.* at 11.

[21]*Id.* at 16 (footnote omitted).

[22]*Id.* at 16 & n.11; *Perry v. Thomas*, 482 U.S. 483, 492 & n.9 (1987).

[23]*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989) (citations and internal quotation marks omitted).

[24]For purposes of this report and recommendation, the Court will presume without deciding that the parties' contract "is principally for the construction or repair of an improvement to real property located" in Texas.  No one argues otherwise even though the contract originally contemplated projects throughout the United States.

[25]*OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 446-47 (5th Cir. 2001).

Other courts have also found similar state statutes preempted by the FAA.[26]  By placing additional restrictions on the arbitration agreement, the applicable Texas statute – whether § 35.52(a) or § 272.001 – places the agreement on unequal footing with other contracts.  The state statutes thus stand as obstacles to the purposes and objectives of § 2 of the FAA.  Consequently, the FAA preempts the Texas law upon which Defendant relies.  The Texas statute thus cannot invalidate the venue provision of the contract.  Defendant may not rely on it to void that provision.

Contending that the preemption argument "misses the mark," Defendant argues that its own position is not that the Texas statute trumps the contract, but rather that it is entirely consistent with the agreement.[27]  Even if the FAA does not preempt the Texas statute, however, Defendant erroneously concludes that venue lies in Texas.  The conclusion rests upon a faulty premise that Texas law requires application of its law to the contract.  But neither version of the  identified statute requires the application of Texas law to construction contracts.  The statute does not *ipso facto* void the choice-of-law provision in the contract.  It merely make choice-of-law provisions voidable by the party obligated to perform the construction.  That Defendant invokes Texas law in an attempt to void ¶¶ 39 and 42 of the contract does not transform its unilateral choice into a state-law requirement.[28]

---

[26]*See, e.g.*, *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49-52 (1st Cir. 1999) (finding a Rhode Island franchise statute preempted because it rendered unenforceable forum-selection provisions that restricted jurisdiction or venue to outside of Rhode Island); *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 888-90 (9th Cir. 2001) (finding a California franchise statute preempted because it rendered void forum-selection provisions that restricted venue to outside of California).

[27]Def.'s Resp. Opp'n at 13.

[28]*See* Def.'s Resp. Opp'n at 6 ("To avoid any confusion on the matter, Jordan (the party obligated by the Contract to perform construction services) intends and seeks to avoid the provisions of the Contract attempting to make the Contract or any conflict arising under the Contract subject to Kansas law and arbitration in Kansas – specifically portions of Sections 39 and 42 of the Contract referencing Kansas law and Kansas as the selected forum for any arbitration.")

Standing alone, neither version of the cited statutes requires application of a particular law to construction contracts.  Because Texas law does not of itself require application of non-Kansas law, the unless clause of ¶ 42 does not alter the parties' general agreement that Kansas law would apply.

Unless Texas law is not preempted by the FAA and applies through ¶ 42, that law cannot make ¶ 39 voidable.  Paragraph 39 clearly establishes Kansas as the place for arbitration, unless the parties mutually agree otherwise.  The parties have not mutually agreed to change the place for arbitration.[29]  Consequently, this Court is the proper judicial forum for this action to enforce the arbitration provision.[30]

## III.    PRELIMINARY INJUNCTION STANDARD

Plaintiff commenced this action to enforce a contractual venue provision under the Federal Arbitration Act.[31]  It seeks a preliminary injunction to enjoin Defendant from (1) seeking to conduct the parties' arbitration hearing outside of Wichita, Kansas and under non-Kansas law and (2) asking the AAA to hold the hearing in Texas under Texas law.[32]

To prevail on a motion for a preliminary injunction, the movant must establish (1) a likelihood of success on the merits, (2) a likelihood that it will "suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "that an injunction is in

---

[29]Even if the Court agreed that Texas law required that it be applied to the construction contract between the parties and that the Texas law was not preempted by the FAA, the Court would not find that ¶¶ 39 and 42, when read together, amount to a mutual agreement to arbitrate the case outside of Kansas.  At most, Texas law gives Defendant a unilateral ability to void certain provisions.  That unilateral ability does not equate to a mutual agreement between the parties.

[30]*See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005).

[31]Compl. ¶ 8.

[32]Mot. at 1-2.

the public interest."[33]  Such an injunction is "an extraordinary remedy never awarded as of right" – the courts instead "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[34]  Given the extraordinary and drastic nature of a preliminary injunction, the movant must clearly and unequivocally carry its burden of persuasion.[35]  Whether to grant an injunction rests within the sound discretion of the courts after balancing the equities and paying particular regard to the public interests.[36]

### A.  Likelihood of Success

Federal courts conduct a two-step inquiry to determine whether to compel arbitration.[37]  They first decide whether the parties agreed to arbitrate their dispute generally using state-law, contract principles.[38]  If that question is decided in favor of arbitration, the courts consider whether any "legal constraints external to the parties' agreement foreclosed the arbitration of th[e] claims."[39]

The parties in this case agree that they contracted to arbitrate disputes arising from their contract.  Arbitration is not foreclosed by legal constraints external to the contract.  The parties merely disagree as to its location and the applicable law.  For the reasons discussed in the judicial venue section, however, Plaintiff has demonstrated that the parties' contract disputes should be resolved through arbitration in Wichita, Kansas.  Accordingly, Plaintiff has shown a substantial like-

---

[33]*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)

[34]*Id.* at 24.

[35]*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[36]*Winter*, 555 U.S. at 24.

[37]*OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001).

[38]*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995).

[39]*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

lihood of success on the merits.

In addition to its unsuccessful judicial venue arguments, Defendant asserts two theories for why Plaintiff has no likelihood of success on the merits.  It first argues that Plaintiff is not "an aggrieved party" as required to pursue relief under 9 U.S.C. § 4, because Defendant has not failed, neglected, or refused to arbitrate the dispute between the parties.[40]  Defendant, however, has object-ed to arbitration in Kansas.  That objection is sufficient to make Plaintiff an aggrieved party within the meaning of § 4.  Courts have "interpreted § 4 to extend to parties whose grievance is the other party's failure to arbitrate under the terms of the arbitration agreement."[41]  In other words, "§ 4 allows parties who feel that their case is not being arbitrated, or is being arbitrated improperly, to petition the court for an order compelling arbitration on the proper terms."[42]  In this case, the dis-puted term is the location of the arbitration.[43]  This Court has implicitly agreed that a party may be aggrieved within the meaning of § 4 when an opposing party refuses to arbitrate in the manner

---

[40]Def.'s Resp. Opp'n at 8-10.

[41]*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (addressing claims that opponents "were exceeding the terms of the agreement by attempting to arbitrate punitive damages and potentially stale claims); *accord Sterling Fin. Inv. Group, Inc. v. Hammer*, 393 F.3d 1223, 1225 (11th Cir. 2004) (holding that § 4 provides the federal courts authority "to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators").

[42]*Lauer*, 49 F.3d at 326.

[43]This disputed term distinguishes this case from *Aaacon Auto Transport, Inc. v. Barnes*, 603 F. Supp. 1347 (D.C.N.Y. 1985), a case relied on by Defendant for the proposition that Plaintiff is not an aggrieved party within the meaning of § 4, *see* Def's Resp. Opp'n at 9.  Nothing in that case shows that the arbitration provision contained a venue provision that was being disregarded.  *See* 603 F. Supp. at 1347-51.  One court, furthermore, has described the relied-upon language of *Aaacon* as dictum.  *See Avant Petroleum, Inc. v. Pecten Arabian Ltd.*, 696 F. Supp. 42, 44 (S.D.N.Y. 1988).

provided in the contract.[44]

Defendant next argues that only an arbitrator has the power to determine procedural issues like the location for arbitration.[45]  But Defendant provides no on-point, binding authority for that argument.  It instead sets out general principles espoused in *Howsam v. Dean Witter Reynolds, Inc.*[46] and *Green Tree Financial Corporation v. Bazzle*,[47] which have been interpreted by the First,[48] Second,[49] and Fourth Circuits[50] as precluding judicial determinations of venue issues in the arbitration context.[51]  The Tenth Circuit has not directly addressed whether venue is a procedural issue only for arbitral decision.  But in *1mage Software, Inc. v. Reynolds and Reynolds, Co.*, it upheld a decision to compel arbitration in a different district under 9 U.S.C. § 4.[52]  While that case provides some support for finding that the location of arbitration is within the Court's authority under § 4, the Court should also consider the cited Supreme Court cases.

Although *Howsam* does not address a venue provision, it does provide controlling guidance

---

[44]*See PaineWebber, Inc. v. Fowler*, 791 F. Supp. 821, 824-27 (D. Kan. 1992) (addressing an alleged failure to arbitrate exclusively before the National Association of Securities Dealers, Inc. (NASD)).

[45]Def.'s Resp. Opp'n at 10-13.

[46]537 U.S. 79 (2002).

[47]539 U.S. 444 (2003).

[48]*Richard C. Young & Co. v. Leventhal*, 389 F.3d 1, 3-5 (1st Cir. 2004).

[49]*UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps.,* 660 F.3d 643, 654-55 (2d Cir. 2011).

[50]*Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 273-74 (4th Cir. 2011).

[51]Plaintiff likewise relies on non-binding authority.  *See* Reply at 6-7 (relying on *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999); *McCullough v. Dean Witter Reynolds, Inc.*, 177 F.3d 1307, 1310 (11th Cir. 1999).  Notably, these cases predate the Supreme Court cases.

[52]*See* 459 F.3d 1044, 1046-47 (10th Cir. 2006).

as to whether an arbitration issue is to be decided by judicial action or through the arbitration process itself.[53]  It begins with the well-established proposition that no party may be compelled to arbitrate a dispute that it did not agree to arbitrate.[54]  It then reaffirms that "whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[55]  This question is more limited than it first appears:

> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits.  The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope.  The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.
>
> Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide.  Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.
>
> At the same time the Court has found the phrase "question of arbitrability" not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter.  Thus "'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator, to decide.  So, too, the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability."[56]

In *Green Tree*, a plurality of the Supreme Court concluded that arbitrators, not courts, deter-

---

[53]*See* 537 U.S. at 81-86.

[54]*Id.* at 83.

[55]*Id.* (citations omitted).

[56]*Id.* at 83-84 (citations omitted).

mine whether a contract forbids class arbitration when the contract commits a broad scope of issues to arbitration.[57]   According to the plurality, the relevant question before the district court was procedural – "what kind of arbitration proceeding the parties agreed to" – rather than a question of arbitrability, i.e., "whether [the parties] agreed to arbitrate a matter" in the first instance.[58]   After noting that the relevant question concerns "contract interpretation and arbitration procedures," rather than "a state statute or judicial procedures," the Court concluded that arbitrators should interpret the contract.[59]   Justice Stevens concurred, but only to provide a "controlling judgment."[60]   Like *Howsam*, *Green Tree* does not address whether venue is a procedural issue limited to an arbitrator's review. And given the fractured Court on the issue in *Green Tree*, the case arguably provides little precedential value on the issue before this Court.[61]

   *Howsam* provides controlling guidance for determining whether courts or arbitrators decide the issue of venue.   The starting point is the arbitration clause itself.   Paragraph 39 sets out a broad arbitration provision with respect to what matters are subject to arbitration.   It then narrows where the arbitration will occur and limits the rules to be applied.   It concludes with the qualification apparently applicable to the entire provision – "unless the parties mutually agree otherwise."   Although the parties agree that their underlying contract dispute is subject to arbitration, they disagree about

---

[57]*See* 539 U.S. at 447-54.

[58]*See id.* at 452 (emphasis omitted).

[59]*Id.* at 452-53.

[60]*Id.* at 455 (Stevens, J., concurring).

[61]*Compare Emp'rs Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 580 (7th Cir. 2006) (questioning precedential value of *Green Tree*) *with Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 586 n.2 (3d Cir. 2007) (concluding that the plurality opinion with the concurrence provides a controlling rationale); *Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 358-59 (5th Cir. 2003) (same).

the location for it.  The disagreement stems directly from the qualifying language at the end of ¶ 39.

Without that disagreement and defense arguments that the parties have agreed to arbitration in

Texas, based on Texas law, there would be no question that any arbitration would occur in Wichita,

Kansas.  Plaintiff, furthermore, argues that the venue issue is properly decided by this Court – not

through the arbitration proceeding.

Under these facts the venue issue appears to be a gateway dispute as to "whether the parties'

binding forum selection clause should be enforced" under 9 U.S.C. § 4,[62] or whether the parties

otherwise mutually agreed to modify that binding clause.  In either scenario, the issue seems to be

one that the parties would more likely expect a court, rather than arbitrator, to decide.  While the

arbitration provision broadly encompasses "[a]ll claims, disputes and other matters in question

arising out of, or relating to, this Agreement," the parties narrow the location of any arbitration to

one particular venue subject only to a mutual agreement to hold it elsewhere.  Given the precise lim-

itation of the venue provision and the required mutual agreement to change it, the parties have not

clearly or unmistakably provided that questions of venue are to be submitted to arbitration.  To the

contrary, they have specifically designated the location for all arbitration.  And to avoid disputes

about it, their contract requires a mutual agreement to alter the chosen location.  In these circum-

stances, it is unlikely that the parties thought they had agreed that an arbitrator would decide the

venue issue.  A judicial ruling on the gateway dispute avoids the possibility of forcing the parties

to arbitrate a matter they did not agree to arbitrate.  For all of these reasons, this Court may properly

determine the arbitration venue issue.

If the venue issue were construed as a procedural matter reserved for arbitration, rather than

---

[62]*See Linsco/Private Ledger Corp. v. Maurice*, No. 3:07-0183, 2007 WL 869720, at *7 (M.D. Tenn.
Mar. 21, 2007).

a "question of arbitrability" reserved for judicial determination, the "unless clause" of ¶ 39 nevertheless makes the venue provision subject to substantive judicial review in this case. The presumption for arbitral decisions of procedural matters is a rebuttable one.[63] Plaintiff has rebutted that presumption. The Court may properly determine the venue issue in this case, including whether the parties mutually agreed to alter the limited venue statement in the otherwise broad arbitration provision.

The *Howsam* guideposts lead to a conclusion that this Court may judicially determine the proper venue for the arbitration. *Green Tree*, to the extent applicable and controlling, does not dictate otherwise. Unlike the question in *Green Tree*, the question here directly relates to the nature of the contractual agreement with respect to venue. And resolution of that question requires consideration and interpretation of a state statute – a matter specifically noted to be absent in *Green Tree*. The other cases cited by Defendant are distinguishable. None of them address an overriding contractual provision that allows the parties by agreement to modify their own, specified location for arbitration or otherwise find that there has been such a modification.

As noted earlier, furthermore, *Image Software* provides independent support by the Tenth Circuit for finding that the Court may make determinations about the location of arbitration under § 4.[64] By affirming the lower court's order to compel arbitration in a different district, the Tenth Circuit at least implicitly indicates that questions of arbitration venue are not solely for arbitrators

---

[63] *See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 383 (1st Cir. 2011) (recognizing that presumption mentioned in *Howsam* is rebuttable); *United SteelWorkers of Am., AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 419 (6th Cir. 2007) (same).

[64] *See* 459 F.3d 1044, 1046-47 (10th Cir. 2006).

16

to decide even when the contract provides a broad scope of matters subject to arbitration.[65]  If the case does not determine this issue, it nevertheless supports a conclusion that this Court may determine the issue of where the agreed arbitration between the parties should occur.[66]

To then determine the issue of where the arbitration should proceed – in Wichita, Kansas, or in Texas – the Court must interpret the contract itself.  Paragraph 39, entitled "Arbitration," specifically names Wichita, Kansas, "unless the parties mutually agree otherwise"[67]  Paragraph 42, entitled "Applicable Law," provides that, "[t]his agreement shall be governed by and construed under the laws of the State of Kansas (excluding conflict of laws principles), unless otherwise required by the laws of the state in which the Project is located" (here Texas).[68]

As already noted, Defendant suggests that its position is not that it trumps the agreement for Wichita venue and Kansas law, but instead that the Texas statute "is entirely consistent with the agreement of the parties."[69]  The argument rests upon the faulty premise that ¶¶ 39 and 42 of the contract by *fait accompli* nullify Wichita and Kansas, because such interpretation is "required by the laws of" Texas, § 35.52 of the Texas Business & Commerce Code.

As Plaintiff points out, however, the Texas statute upon which Defendant relies, has no

---

[65]*See id.* at 1046-56 (noting that the parties "agreed to arbitrate 'any dispute [that] occurs between the parties arising out of or related to [the 1994] Agreement or its negotiation, execution or performance, whether such dispute is in contract, tort or otherwise'").

[66]Notably, before *Howsam*, this Court enjoined arbitration proceedings in a different forum after holding that "[a]greements to arbitrate issues exclusively in a particular forum are enforceable as a matter of contract law."  *See PaineWebber, Inc. v. Fowler*, 791 F. Supp. 821, 826-27 (D. Kan. 1992).

[67]*See* Ex. A (emphasis added).

[68]*See id.* (emphasis added).

[69]Def.'s Resp. Opp'n at 13.

validity to an arbitration agreement like the one here.  The Federal Arbitration Act essentially nulli-fies the Texas statute for the purposes of this litigation.  Defendant has shown nothing to the con-trary.  But it nevertheless argues in essence that the parties by ¶¶ 39 and 42 of their contract *ipso facto* have adopted an invalid or inapplicable Texas statute to thus modify their otherwise explicit, selected designation of Wichita and Kansas.  If their intent was to apply statutes that are either invalid or inapplicable to the contract, as well as valid statutes, one might reasonably expect them to have added a so nonsensical provision into their contract.  Applying elementary contract law, the Court would be hard pressed to conclude that so contorted an interpretation accurately reflects a meeting of the minds or a mutual understanding when the parties entered into their contract.  The defense argument invites the Court to an exercise of sophistry, not sound principles of contract law.  The parties clearly and explicitly designated Wichita and Kansas law.  It requires an unreasonable stretch indeed to say their intent was somewhere else for this particular case.

For all the reasons thus discussed, Plaintiff has shown a substantial likelihood of success on the merits and a lack of merit of defense arguments to the contrary.

### B.  Irreparable Harm

Plaintiff has shown that it will suffer irreparable harm in the absence of its requested relief.  "Injunctive relief is appropriate when there is no adequate remedy at law."[70]  When damages "cannot adequately compensate the injury sustained" from a breach of contract "or cannot be reasonably measured, then the remedy at law is inadequate and injunctive relief . . . may be appropriate because of irreparable injury."[71]  In this case there is no adequate measure of damages for the loss of a con-

---

[70]*PaineWebber, Inc. v. Fowler*, 791 F. Supp. 821, 826 (D. Kan. 1992).

[71]*Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1353-54 (10th Cir. 1989).

tract right to arbitrate disputes in a specifically agreed venue.  Costs of travel to and from Texas and fees for local counsel, of course, are measurable damages.  But those costs do not compensate for the loss of the right itself, for which Plaintiff has bargained.  Accordingly, the harm is irreparable. There is no adequate remedy at law to compensate Plaintiff, if it loses its contractual right to arbitrate disputes with Defendant in Wichita, Kansas.[72]

### C.  Public Interest

Congress primarily enacted the FAA "to 'ensur[e] that private arbitration agreements are enforced according to their terms."[73]  Section 2 of the FAA, 9 U.S.C. § 2, makes the parties' arbitration agreement "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."  Section 4 requires courts to compel arbitration "in accordance with the terms of the agreement."  The overriding consideration is the intent of the parties.[74]  The legislation reflects a substantial public interest for recognizing and enforcing valid contracts, here more specifically arbitration provisions, to give effect to the intent of the parties.  Granting Plaintiff's requested injunctions serves the public interest in furthering the goals of the FAA.

### D.  Balance of Equities

The parties contracted for arbitration in Wichita, Kansas, unless they mutually agreed otherwise.  For the reasons already noted, the arguments by Defendant to alter that choice of venue have no merit.  The weight of the material facts does not support finding that the parties agreed to modify that choice.  Plaintiff merely seeks the benefit of its contractual right to arbitrate in Wichita, Kansas.

---

[72]*See PaineWebber, Inc.*, 791 F. Supp. at 826 (finding irreparable harm in similar context).

[73]*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)); *accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1763 (2010).

[74]*See Stolt-Nielsen*, 130 S. Ct. at 1763.

Defendant appropriately notes, on the other hand, that the construction project in question was in Texas and that most, if not all, of its subcontractors are in Texas; and Plaintiff has specifically engaged in business in Texas with respect to their contract.[75]  While these facts may favor arbitration in Texas, to honor the contract as written and as the parties intended trumps the factors which Defendant now emphasizes.  The balance of equities favors enforcing the arbitration clause as the contract requires.  Entering the requested injunction simply places the parties in the position warranted by their freely negotiated arbitration provision.  While equities may lie on both sides of the issues, the balance tips in favor of Plaintiff.

<u>RECOMMENDATION</u>

Based on the foregoing, the undersigned Magistrate Judge recommends that the Court grant Lodgeworks' Motion for Preliminary Injunction (ECF No. 3).  It should issue a preliminary injunction to enjoin Defendant (1) against seeking to conduct the parties' arbitration hearing outside of Wichita, Kansas and under non-Kansas law and (2) against asking the AAA to hold the hearing in Texas under Texas law.

Respectfully submitted on this 20th day of December, 2011, in Kansas City, Kansas.


<u>s/Gerald l. Rushfelt</u>
Gerald L. Rushfelt
United States Magistrate Judge

---

[75]Def.'s Resp. Opp'n at 16.